UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:08CV-P33-M

JOSHUA C. KELLEMS                                                                    PLAINTIFF

v.

DAVID OSBORNE *et al.*                                                              DEFENDANTS

## MEMORANDUM OPINION

On or about March 11, 2008, Plaintiff, a convicted inmate currently incarcerated at the

Daviess County Detention Center, filed this civil rights action under 42 U.S.C. § 1983 ("§ 1983").

Plaintiff sued Head Jailer David Osborne,[1] Program Administrator Sara Scott,[2] Lieutenant Bill

Billings, Head Nurse Virginia Phillips, and Dr. Henry Davis.  In his complaint, Plaintiff complains

that Defendants have violated his constitutional rights by refusing to properly treat his heart

condition.  Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v.*

*Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997), the Court allowed Plaintiff's claims to proceed for

further development.  Plaintiff has filed a pretrial memorandum.  Each remaining Defendant has

moved for summary judgment.[3]  This matter is now ripe for consideration.  For the reasons explained

below, the Court will grant summary judgment in favor of all the remaining Defendants.

---

[1]In his complaint, Plaintiff spelled Jailer Osborne's last name "Osbourne."  The Court
takes judicial notice that the correct spelling is "Osborne."

[2]Ms. Scott was voluntarily dismissed by Plaintiff on May 13, 2008.

[3]Plaintiff has not responded to Defendants' summary judgment motions, and the time for
doing so has long since passed.  Nothing in the record suggests that Plaintiff did not receive the
motions.

## I. FACTS

Plaintiff is approximately twenty-seven years old.  In February 2007, prior to his incarceration, Plaintiff experienced four mild heart attacks.[4]  On or about February 2, 2007, Dr. James Ford, a Paducah, Kentucky, cardiologist, placed a stent in Plaintiff's heart.[5]  Plaintiff was scheduled to have a CT scan, EKG, and blood work done at Western Hospital in Paducah in May of 2007.  According to Plaintiff the purpose of these tests was to determine "if my heart had developed any more blood clots and to see if my stent and medication took to my heart without any problems."  Plaintiff was unable to have the tests performed because he was arrested in San Diego, California, prior to his appointment.  He was transferred to the Daviess County Detention Center in August 2007.

Once at the Daviess County Detention Center, Plaintiff states that be began requesting to see a doctor and have the tests performed to check his heart.  Plaintiff states that he wrote and complained to Defendants Billings and Osborne, but received no response.  He states that Defendants Phillips and Davis, both medical providers at the jail, have been deliberately indifferent to his condition by refusing his requests to have the tests that Dr. Ford previously scheduled performed to check his heart.  According to Plaintiff, the tests are necessary because they will reveal if his "life and heart are in danger at all."

Defendants counter that "Plaintiff is medically stable and that due to Plaintiff's lack of

---

[4]In his complaint, Plaintiffs states that the heart attacks occurred in February.  From the medical records submitted by Defendants, however, it appears that at least a portion of the attacks may have occurred in the late part of January 2007.

[5]Plaintiff does not explain what caused the heart attacks or why a stent was necessary.  Dr. Fords' medical notes submitted by Defendants in support of their summary judgment motion indicate that the stent was placed in Plaintiff's heart because he had a "99% complex stenosis in the distal right coronary artery prior to the posterior descending branch" of his heart.

symptoms, the tests he was requesting were not indicated." To support their assertions, Defendants have submitted Plaintiff's medical records. The medical records show that Plaintiff is not presently experiencing any symptoms indicative of further heart problems; that Plaintiff was seen by Dr. Davis on or about March 4, 2008, relative to his heart condition; that Dr. Davis reviewed Plaintiff's medical history and consulted with a local area cardiologist who advised that Plaintiff's condition would not support a CT scan at this time; and finally, that Plaintiff is receiving heart medication. Plaintiff has failed to rebut any of these assertions.

## II.  SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, however, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court reviews the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than show there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

3

### III.  ANALYSIS

In the context of a § 1983 claim for inadequate medical care, prison personnel violate a prisoner's civil rights if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  However, not every claim of inadequate medical treatment states an Eighth Amendment violation.  *Id.* at 105.  The indifference must be substantial; that is, it must be an offense to evolving standards of decency.  *Id.* at 106.  A patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983.  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995).  The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment.  At most, a medical decision not to order an x-ray or like measures represents medical malpractice.  *Estelle*, 429 U.S. at 107.  Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis or treatment of a prisoner fail to state a cause of action.  *Id.* at 105-06.  Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 107.

The facts are undisputed that Plaintiff has been provided with medical treatment.  He has seen the prison medical staff who have examined him and consulted with an outside specialist.  Plaintiff is also receiving medication for his heart.  Absent is any indication that Defendants have deliberately withheld treatment from Plaintiff.  In fact, the record indicates precisely the opposite.  Dr. Davis took affirmative steps to ensure proper treatment for Plaintiff's condition by consulting a specialist.  The

4

specialist advised that the tests that Plaintiff wants to have performed are not necessary at this time. Dr. Davis and the other Defendants have not ignored or refused to treat Plaintiff. Plaintiff merely disagrees with the medical treatment he has received while incarcerated. The facts do not support an Eighth Amendment claim. Accordingly, Defendants are entitled to summary judgment.

Defendants Osborne and Billings are entitled to summary judgment for the additional reason that they were not involved in Plaintiff's care. "Respondeat superior[6] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, the fact that Defendants Osborne and Billings were aware of Plaintiff's complaints is not enough to subject them to liability under § 1983 for Plaintiff's medical providers' alleged failure to provide Plaintiff with the type of treatment he desired. *See, e.g.*, *Brown v. Green*, No. 97-1117, 1997 U.S. App. LEXIS 35331 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as the Medical Director of the Michigan Department of Corrections, cannot be held liable

---

[6]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

for an alleged constitutional violation, because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff).

Consistent with this Memorandum Opinion, the Court will separately enter summary judgment in favor of all of the remaining Defendants.

Date:

cc:     Plaintiff, *pro se*
        Counsel of record
4414.008